Jeanine V. RICHARDSON, Plaintiff,

v.

PORTER HEDGES, LLC, Defendant.

Civil Action No. H–13–1753.

United States District Court,
S.D. Texas,
Houston Division.

Signed May 28, 2014.

Jeanine V. Richardson, Houston, TX, pro se.

Carolyn A. Russell, Stephen Jose Quezada, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Houston, TX, for Defendant.

## ORDER

DAVID HITTNER, District Judge.

Pending before the Court is a Motion for Partial Dismissal (Document No. 14) filed by Defendant Porter Hedges, LLC. Having considered the motion, submissions, and applicable law, the Court determines the motion should be granted.

### I. BACKGROUND

This is an employment discrimination case. Plaintiff Jeanine V. Richardson ("Richardson") was employed for eight months in 2011 by Defendant Porter Hedges, LLC ("Porter Hedges") as a legal secretary. Richardson is an African-American who, when hired, was forty-nine years old. Richardson claims Porter Hedges discriminated against her based on her race, color, and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act (the "ADEA").

After Porter Hedges terminated Richardson, she filed a charge of discrimination (the "Charge") with the Equal Employment Opportunity Commission (the "EEOC").[1] The EEOC conducted an investigation, and on March 20, 2013, it dismissed Richardson's Charge because it was "unable to conclude that the information obtained establishes violations of the statutes."[2] Along with notice of dismissal, the EEOC issued Richardson notice of her right to sue based on the Charge within ninety days (the "Notice of Suit Rights").[3]

On June 17, 2013, Richardson filed an original complaint in this Court. On January 3, 2014, she filed an amended complaint. Porter Hedges has moved for partial dismissal. According to Porter Hedges, the Charge asserts two types of claims—a disparate treatment claim and a retaliation claim; the original complaint asserts one type of claim—a disparate treatment claim; and the amended complaint asserts five types of claims—a disparate treatment claim, a disparate impact claim, a pattern and practice discrimination claim, a hostile work environment claim, and a retaliation claim. Porter Hedges alleges the disparate impact, pattern and practice discrimination, and hostile work environment claims should be dismissed under Federal Rule

---

1. *Charge of Discrimination,* Document No. 1 at 6.

2. *Dismissal and Notice of Rights,* Document No. 1 at 7.

3. *Dismissal and Notice of Rights,* Document No. 1 at 7.

of Civil Procedure 12(b)(1) for failure to exhaust administrative remedies, as those claims were not asserted in the Charge. In addition, Porter Hedges alleges the disparate impact, pattern and practice discrimination, hostile work environment, and retaliation claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to file suit within ninety days of receipt of the Notice of Suit Rights, as those claims were asserted in the amended complaint but not the original complaint. Thus, it is Porter Hedges's position that only the disparate treatment claim should remain at this time because only the disparate treatment claim was asserted in both the Charge and the original complaint. Richardson, proceeding pro se, opposes partial dismissal.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1)—Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) requires that a court dismiss a claim if the court does not have subject matter jurisdiction over the dispute. FED. R. CIV. P. 12(b)(1). A motion for lack of subject matter jurisdiction under Rule 12(b)(1) must be considered before any motion on the merits because subject matter jurisdiction is required to determine the validity of any claim. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir.1994). "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 741 (5th Cir.1986). Unlike a court considering a Rule 12(b)(6) or Rule 56 motion, district courts have a "unique power . . . to make factual findings which are decisive of [subject matter] jurisdiction" when considering a motion under Rule 12(b)(1) that raises questions of fact relevant to subject matter jurisdiction. *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir.1981).

### B. Rule 12(b)(6)—Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R.CIV.P. 8(a)(2). Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than . . . 'labels and conclusions.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). " '[A] formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)). To survive the motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expen-

diture of time and money by the parties and the court.'" *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir.2007) (quoting *Twombly,* 550 U.S. at 558, 127 S.Ct. 1955).

### III. LAW & ANALYSIS

Interpreting Richardson's amended complaint liberally, she asserts five types of claims against Porter Hedges: a disparate treatment claim, a disparate impact claim, a pattern and practice discrimination claim, a hostile work environment claim, and a retaliation claim. First, the Court finds the disparate impact, pattern and practice discrimination, and hostile work environment claims should be dismissed for failure to exhaust administrative remedies.[4] Having dismissed those claims, next the Court finds the retaliation claim should be dismissed under Rule 12(b)(6) for failure to file suit within ninety days of receipt of the Notice of Suit Rights. Each of these issues is addressed in turn.

### A. Failure to Exhaust Administrative Remedies

■ Plaintiffs suing under Title VII or the ADEA must exhaust their administrative remedies before filing a civil lawsuit. *Castro v. Tex. Dep't of Criminal Justice,* 541 Fed.Appx. 374, 379 (5th Cir. 2013) (citing *McClain v. Lufkin Indus., Inc.,* 519 F.3d 264, 273 (5th Cir.2008) (Title VII)) (citing *Foster v. Nat'l Bank of Bossier City,* 857 F.2d 1058, 1060 (5th Cir.1988) (ADEA)). "Private sector employees must satisfy this requirement by filing an administrative charge with the EEOC." *McClain,* 519 F.3d at 273. In assessing whether a charge properly exhausts a par-

ticular claim, the court is to construe the charge broadly yet "only find a claim exhausted if it could have been 'reasonably ... expected to grow out of the charge of discrimination.'" *Jefferson v. Christus St. Joseph Hosp.,* 374 Fed.Appx. 485, 490 (5th Cir.2010) (quoting *McClain,* 519 F.3d at 273). This involves a fact-intensive analysis of the plaintiff's statement in the charge that looks slightly beyond the four-corners of the charge to the substance. *Pacheco v. Mineta,* 448 F.3d 783, 789 (5th Cir.2006). Accordingly, the Court analyzes whether an EEOC investigation into disparate impact discrimination, pattern and practice discrimination, or a hostile work environment might reasonably have been expected to grow out of Richardson's Charge. *See id.* at 791.

### 1. Disparate Impact

■ Disparate-treatment discrimination involves an employment action that treats an individual employee worse than other employees based on, inter alia, the employee's race or age; whereas disparate-impact discrimination involves an employment practice or policy that is facially neutral but, in fact, has a disproportionately adverse effect on a protected group. *Id.* at 787. As such, a plaintiff alleging a disparate impact claim "must show (1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected class." *Id.* at 791. "A neutral employment policy is the cornerstone of any EEO[C] disparate-impact investigation, since the EEO[C] must evaluate both the policy's effects on protected classes and any business justifications for the policy." *Id.* at 792. A charge that complains of only past incidents of disparate treatment

---

4. "There is currently a disagreement in [the Fifth Circuit] concerning whether the exhaustion of administrative remedies requirement is a prerequisite to bringing suit or whether it deprives the district court of subject-matter jurisdiction." *Sapp v. Potter,* 413 Fed.Appx. 750, 752 n. 1 (5th Cir.2011). The Court does not address this disagreement because it is inconsequential to dismissal of the claims in this case.

and does not identify a neutral employment policy does not exhaust a disparate impact claim. *See, e.g., id.* at 792; *Kluttz v. WORLDPAC,* No. 4:12–CV–2009, 2013 WL 6731880, at *6 (S.D.Tex. Dec. 19, 2013) (Hoyt, J.).

■ Here, only an EEOC investigation into disparate treatment would have reasonably grown out of Richardson's Charge, not an investigation into disparate impact. In her Charge, Richardson claimed she was not promoted to a trademark paralegal position or an intellectual property paralegal position because of her race or age, and she claimed she was better qualified than the two individuals who received these paralegal positions.[5] She also asserted she was reprimanded for allegedly displaying poor communication skills when in fact her communication skills were not poor.[6] Similarly, she asserted she was discharged because allegedly her production was low when in fact her production was satisfactory.[7] All these incidents—not being promoted, being reprimanded, and being discharged— are examples of disparate treatment, not disparate impact, because they involve Richardson being *individually* treated worse than others allegedly based on her race or age. Moreover, even under the most liberal of interpretations, the Charge does not identify a facially neutral employment policy or assert facts that would have reasonably led the EEOC to investigate a neutral employment policy. Because the Charge complains of only past incidents of disparate treatment and does not identify a neutral employment policy, the scope of Richardson's Charge is too narrow to have exhausted a disparate impact claim. Accordingly, Richardson's disparate impact claim is dismissed.

### 2. Pattern and Practice Discrimination

■ Pattern and practice discrimination claims differ significantly from claims of individualized disparate treatment. *See E.E.O.C. v. Bass Pro Outdoor World, LLC,* 884 F.Supp.2d 499, 514, 518–20 (S.D.Tex. 2012) (Ellison, J.). "A 'pattern or practice' of discrimination does not consist of 'isolated or sporadic discriminatory acts by the employer. Rather, as the Supreme Court has explained, it must be established by a preponderance of the evidence that [the impermissible] discrimination was the company's standard operating procedure—the regular rather than the unusual practice.' " *Wyvill v. United Cos. Life Ins. Co.,* 212 F.3d 296, 302 (5th Cir.2000) (alternation in original) (citation omitted) (quoting *Cooper v. Fed. Reserve Bank of Richmond,* 467 U.S. 867, 875–76, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984)).

■ As explained *supra,* the factual allegations in Richardson's Charge concern only her *individual* experience of allegedly being discriminated based on race or sex. The Charge never alleges that it was Porter Hedges's standard operating procedure to discriminate, that Porter Hedges regularly discriminated, or that Porter Hedges discriminated against any other employee besides Richardson. The factual allegations in the Charge, even liberally construed, could not reasonably have led to an investigation into whether Porter Hedges

---

5. *Charge of Discrimination,* Document No. 1 at 6.

6. *Charge of Discrimination,* Document No. 1 at 6.

7. *Charge of Discrimination,* Document No. 1 at 6. In her Charge, Richardson also claims she was discharged in retaliation for opposing discriminatory hiring, which raises a retaliation claim. Porter Hedges does not contend Richardson failed to exhaust her retaliation claim.

had a pattern and practice of discriminating against employees based on race or age. Accordingly, Richardson did not exhaust her pattern and practice discrimination claim, and that claim is dismissed.

### 3. Hostile Work Environment

■ A hostile work environment claim involves harassment based on, inter alia, race or age, which is "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Walton–Lentz v. Innophos, Inc.*, 476 Fed.Appx. 566, 570 (5th Cir.2012) (alternation in original); *Hiner v. McHugh*, 546 Fed.Appx. 401, 408 (5th Cir.2013). "Whether an environment is hostile or abusive depends on the totality of the circumstances, including the frequency and severity of the discriminatory conduct; whether it is physically threatening or humiliating, or a 'mere offensive utterance'; and whether it unreasonably interferes with an employee's ability to perform his job." *Hiner*, 546 Fed. Appx. at 408.

In her Charge, Richardson does not raise any facts that might reasonably have led to an investigation into a hostile work environment. Besides the discrete incidents of disparate treatment explained *supra*, the Charge does not mention any harassment or abuse, such as offensive comments or humiliating conduct. Accordingly, Richardson failed to exhaust her administrative remedies as to a hostile work environment claim, and her hostile work environment claim is dismissed.

### B. Failure to File Suit Within Ninety Days of Receipt of the Notice of Suit Rights

Under Title VII and the ADEA, a plaintiff must file a civil action within ninety days of receiving a right-to-sue letter from the EEOC. *Menson v. City of Baton Rouge*, 539 Fed.Appx. 433, 434 (5th Cir. 2013) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir.2002) (Title VII)) (citing *St. Louis v. Tex. Worker's Comp. Comm'n*, 65 F.3d 43, 45, 47 (5th Cir.1995) (ADEA)). "This requirement to file a lawsuit within the ninety-day limitation period is strictly construed." *Taylor*, 296 F.3d at 379. Strict adherence to this ninety-day statute of limitations is required even for *pro se* litigants. *See, e.g., Washington v. City of Gulfport, Miss.*, 351 Fed.Appx. 916, 917–18 (5th Cir.2009); *Bowers v. Potter*, 113 Fed.Appx. 610, 612–13 (5th Cir.2004). "[C]ommencement of the ninety-day period begins to run on the day that notice is received at the address supplied to the EEOC by the claimant." *Bowers*, 113 Fed.Appx. at 612. When the date of receipt of the letter is unknown or is in dispute, courts presume the letter was received within three to seven days after it was mailed, unless otherwise shown. *Id.* at 612–13; *Taylor*, 296 F.3d at 379–80.

Richardson's Notice of Suit Rights states that it was mailed March 20, 2013.[8] Richardson has not alleged when she received this notice. Even applying the most generous presumption of seven days delivery time, the notice would have been received on March 27, 2013. Ninety days after March 27, 2013, is June 26, 2013. Richardson filed her original complaint on June 17, 2013, which is before the ninety-day limitation period; however, she did not file her amended complaint until January 3, 2014, which is well after the ninety-day limitation period. Therefore, any claims raised for the first time in the amended complaint, which were not raised in the original complaint, are untimely and should be dismissed, unless those claims

---

**8.** *Dismissal and Notice of Rights,* Document No. 1 at 7.

meet the requirements of the relation back doctrine.

"Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541, 130 S.Ct. 2485, 177 L.Ed.2d 48 (2010). Under Rule 15(c), an amended complaint may relate back to the date of the original complaint when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R.CIV.P. 15(c)(1)(B). The focus of the inquiry is on the underlying facts that the cause of action is based upon. *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 342 (5th Cir.2005). "The purpose of the rule is accomplished if the initial complaint gives the defendant fair notice that litigation is arising out of a specific factual situation." *Id.* (internal quotation marks omitted).

██ Having already dismissed the disparate treatment, pattern and practice discrimination, and hostile work environment claims, the Court addresses only the retaliation claim. Richardson alludes to a retaliation claim in only two short paragraphs of her twenty-five page amended complaint. First, she states, "[Richardson] complained to [Porter Hedges's] management that she was repeatedly passed over for promotions in favor of less qualified white and non-African American and/or much younger employees. When [Rich-ardson] questioned [Porter Hedges] about this, [Porter Hedges] terminated [Richardson]." [9] Later, Richardson states, "[Porter Hedges's Equal Employment Opportunities and Human Resources] functions also failed to prevent the firm from retaliating against African American employees who challenged unfair treatment or tried to enhance [equal employment] opportunities." [10] Richardson's original complaint does not describe any similar conduct. [11] Specifically, the original complaint does not allege that Richardson ever complained to Porter Hedges to any way, questioned Porter Hedges about any issue, or tried to enhance equal employment opportunities. In addition, the original complaint does not mention Porter Hedges's equal employment opportunity or human resources functions, nor does it allege Porter Hedges failed to prevent retaliation. Although "discharged from employment" is listed as a damage in the original complaint's section entitled "Damages," [12] discharge/ termination is not mentioned elsewhere in the original complaint. Rather, in the original complaint, Richardson alleged Porter Hedges "intentionally discriminated against" her by "denying [her] promotion" and "used discriminatory employment practices" by "treating similarly situated employees more favorably than" her. [13] None of the allegations in the original complaint are similar to a retaliation claim. Likewise, none of the facts in the original complaint are similar to the facts that the retaliation claim are based upon. Thus, the original complaint did not give

---

9. *Richardson's First Amended Complaint,* Document No. 11 at 17, ¶ 43.

10. *Richardson's First Amended Complaint,* Document No. 11 at 18, ¶ 48.

11. *See Plaintiff's Original Complaint,* Document No. 1.

12. *Plaintiff's Original Complaint,* Document No. 1 at 3.

13. *Plaintiff's Original Complaint,* Document No. 1 at 2–3.

Porter Hedges fair notice of facts that could give rise to a retaliation claim.

In contrast, Richardson clearly alleged a retaliation claim in her Charge by stating that she was discriminated against "because of retaliation for opposing discriminatory hiring decisions" and that "[a]fter [she] opposed discriminatory hiring, [she] was discharged based on retaliation."[14] Thus, Richardson knew at the time she filed her original complaint how to effectively plead a retaliation claim, yet she chose not to do so.

For these reasons, the retaliation claim in the amended complaint does not relate back to the date of the original complaint. Because the amended complaint was not filed within ninety days of receipt of the Notice of Suit Rights, the retaliation claim is untimely and is dismissed.

### IV. CONCLUSION

Based on the foregoing, the Court hereby

**ORDERS** that the Motion for Partial Dismissal (Document No. 14) filed by Defendant Porter Hedges, LLC is **GRANTED.** The disparate impact, pattern and practice discrimination, hostile work environment, and retaliation claims are dismissed. Thus, only the disparate treatment claim remains.

14. *Charge of Discrimination,* Document No. 1 at 6.